**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Dirk Christianson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER GRANTING DEFENDANTS'** |
| McLean County, a Political Subdivision | ) | **MOTIONS FOR SUMMARY** |
| of the State of North Dakota; Underwood | ) | **JUDGMENT** |
| Clinic, P.C. d/b/a Washburn Clinic; Jerry | ) | |
| "J.R." Kerzmann, individually, and as | ) | Case No. 1:21-cv-00073 |
| Sheriff of McLean County; Kerri Benning, | ) | |
| FNP-C, individually, and as a Health Care | ) | |
| Authority; Ashley Brossart, RN, | ) | |
| individually, and as Contract Nurse; John | ) | |
| Doe 1-4, individually, and as McLean | ) | |
| County Correctional Officers; John Doe | ) | |
| 5-8, individually, and as McLean County | ) | |
| Detention Center Medical Staff, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court are two motions for summary judgment filed by the Defendants in this case. See Doc. Nos. 68 and 74. Defendant Kerri Benning, FNP-C, individually and as a health care authority, filed a motion for summary judgment on October 11, 2024. See Doc. No. 68. The Plaintiff filed a response in opposition to the motion on November 20, 2024. See Doc. No. 83. Defendant Benning filed a reply brief on December 11, 2024. See Doc. No. 91. Defendants McLean County, a political subdivision of the State of North Dakota, Jerry "J.R." Kerzmann, individually, and as sheriff of McLean County, and Ashley Brossart, RN, individually, and as Contract Nurse (collectively, "the County Defendants") filed a motion for summary judgment on October 14, 2024. See Doc. No. 74. The Plaintiff filed a response in opposition to the motion on November 20, 2024. See Doc. No. 84. The County Defendants filed a reply brief on December 11, 2024. See Doc. No. 89.  For the reasons set forth below, the motions are granted.

1

## I.     **BACKGROUND**

This case arises from an infection the Plaintiff, Dirk Christianson, suffered in 2019 while incarcerated at the McClean County Detention Center ("MCDC"), which ultimately resulted in the amputation of his left leg. Christianson was incarcerated at MCDC from December 22, 2018, through April 6, 2019.

At the time of his incarceration, McClean County contracted with the Washburn Clinic to serve as the health care authority for the facility. Pursuant to North Dakota Correctional Facility Standard 48, the health care authority was responsible for health care administration and the development of health care policies and procedures at the facility. McClean County also contracted with Ashley Brossart, RN, for her to be accessible to inmates when medical issues arose. The contract required Brossart be on call twenty-four hours a day, seven days per week to evaluate medical concerns and provide correctional medical training to correctional officers ("COs") at MCDC.

When Christianson was booked into MCDC on December 22, 2018, CO Jeffrey Turning Heart performed a medical assessment during which Christianson reported having numerous medical issues. During his approximately four and a half months of incarceration at MCDC, Christianson submitted seven written requests for medical attention. He was transported to outside facilities for medical care on nine separate occasions, including the Emergency Department at Sanford Health in Bismarck, the Emergency Department at CHI St. Alexius in Bismarck, and the Washburn Clinic.

As relevant to the Defendants' summary judgment motions, Christianson was transported to the Washburn Clinic on March 19, 2019, for a visit with Michele Leidholm, FNP for his complaints of severe edema in his legs, high blood pressure, shortness of breath, chronic back and

right knee pay, bloated abdomen, and constipation. After assessing him, Leidholm concluded Christianson's blood pressure was uncontrolled and he was retaining water, which caused the edema and other symptoms. Leidholm prescribed a blood pressure medication (amlodipine) and Lasix to help him get rid of the excess fluid he was retaining. She ordered several labs to be completed that day and ordered the labs to be rechecked on April 8, 2019.

On April 2, 2019, Christianson had a fever of 102°F in the afternoon and 103°F in the evening. The jail staff treated his fever with Tylenol. On April 3, 2019, CO Anna Six called MCDC's contracted nurse, Ashley Brossart, to advise her of Christianson's fever the prior day. During the phone call, Brossart instructed CO Six to take Christianson's vitals. After CO Six advised Brossart of Christianson's blood pressure, pulse, and temperature, Brossart instructed CO Six to call the Washburn Clinic for an evaluation.

On April 3, 2019, Christianson was taken to the Washburn Clinic for an appointment with FNP Kerri Benning. Prior to the appointment Benning reviewed Christianson's medical history and recent lab work. She also spoke with Leidholm regarding Christianson's March 19, 2019, appointment. Upon arrival Christianson's vitals were taken, which revealed that he did not have a fever. Nevertheless, Benning assessed Christianson to determine the cause of the fever. She determined Christianson did not have any cold or flu symptoms. Benning ordered a urinalysis and an influenza test. Both tests were negative. Benning concluded the fever could be the beginning of a viral process. She ordered Christianson to continue taking Tylenol, rest, drink fluids, and return if his condition did not improve or worsened. Benning noted that Christianson was due for labs in five days, but stated the labs could be completed sooner if Christianson did not improve or worsened. She also addressed Christianson's low blood pressure. Based on his medical history, vital signs, weight loss, and Benning's assessment of Christianson, she diagnosed him as being

diuresed and ordered his Lasix dosage be lowered. Further, Benning ordered his blood pressure be taken twice daily until stable. Benning instructed both Christianson and MCDC that he would need a further workup if his condition worsened or did not improve. Benning faxed the instructions to MCDC.

Following the appointment MCDC staff monitored Christianson's temperature, blood pressure, and heart rate until April 6, 2019. Christianson presented with a fever on April 4th and April 5th and was provided ibuprofen and Tylenol. On April 6, in the late morning or early afternoon CO Tristian Weinfortner checked on Christianson and offered him recreational time. He noticed Christianson shuffling on his knees and asked if he hurt his leg. Christianson told CO Weinfortner that he fell on the ground and hit his knee. CO Weinfortner noted that Christianson's left knee was slightly red. He instructed Christianson to inform him if his knee worsened so the jail could fill out a medical request form for Brossart. CO Weinfortner then took Christianson to recreational time.

Later that day Christianson complained to CO Jesse Feist of left knee pain. CO Feist noticed his knee was red, swollen, and warm to the touch. He advised CO Weinfortner of Christianson's condition. CO Samantha Kamphius later observed Christianson crawling on the floor, slurring his words, and "talking kind of gibberish." See Doc. No. 71-14, p. 41. CO Weinfortner then called the Washburn Ambulance who transported Christianson to the Emergency Room at Sanford Health in Bismarck.

Sanford treated Christianson under a sepsis protocol. See Doc. No. 71-15. Id. A few days after arriving at the hospital, he was diagnosed with necrotizing fasciitis and was found to have a Streptococcus Group A infection. Id. He was given antibiotics to treat the infection. Two irrigation and debridement procedures were performed on Christianson's left knee on April 7, 2019. See

Doc. No. 79-10. On April 9, 2019, Christianson's leg was amputated above the left knee to control the infection. See Doc. No. 79-11.

On April 1, 2021, Christianson initiated this action against the Defendants. Christianson brings claims against Sheriff Kerzmann, Ashley Brossart, RN, and Kerri Benning, FNP-C in their individual capacities under 42 U.S.C. § 1983. He also brings claims against unidentified McClean County correctional officers ("John Does 1-4") and detention center medical staff ("John Does 5-8") for civil rights violations.[1] Christianson asserted a claim under *Monell v. Dept. of Social Security Services of New York*, 436 U.S. 658 (1978) against McLean County and Sheriff Kerzmann in his official capacity, which the Court dismissed on December 30, 2021. See Doc. No. 38. Christianson also asserted claims of medical negligence against Benning and the Washburn Clinic, which the Court dismissed on March 25, 2022, due to Christianson's failure to timely serve an expert affidavit. See Doc. No. 54. The Defendants filed motions for summary judgment on the Plaintiff's Section 1983 claims, arguing they are entitled to qualified immunity. The motions have been fully briefed and are ripe for disposition.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.

---

[1] On January 16, 2025, Christianson moved for leave to file an amended complaint that identifies ten John Does. See Doc. No. 93. On February 18, 2025, the Court issued its Order Denying Plaintiff's Motion to Amend Complaint. See Doc. No. 102.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252. If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

III.    **LEGAL DISCUSSION**

A.    **DELIBERATE INDIFFERENCE STANDARD**

The Plaintiff argues Benning and the County Defendants were deliberately indifferent to his serious medical needs. "A pretrial detainee's deliberate indifference claim is governed by the Fourteenth Amendment, which prohibits a state from depriving any person of life, liberty, or property, without due process of law." Smith v. Lisenbe, 73 F.4th 596, 600 (8th Cir. 2023) (internal

quotations and citations omitted). However, a pretrial detainee's Section 1983 claim is analyzed under the Eighth Amendment framework. Id. "It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000). To establish an Eighth Amendment claim, the plaintiff must prove that the defendant committed "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Cannon v. Dehner, 112 F.4th 580, 586 (8th Cir. 2024). Deliberate indifference has both an objective and a subjective component. "The plaintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

As to the objective component, "the need or the depravation alleged must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis" to constitute an objectively serious medical need or deprivation of that need. Id. For example, in *Cannon*, the Eighth Circuit Court of Appeals concluded that unless the inmate's broken wrist was obvious to a layperson, the nurses' decision to treat a wrist injury more conservatively than if they knew the wrist was broken did not establish that they were deliberately indifferent to the inmate's serious medical need. Cannon, 112 F.4th at 586-87.

As to the subjective component, "[d]eliberate indifference is akin to criminal recklessness, falling somewhere between negligence at one end and purpose or knowledge at the other." Id. (internal quotation marks omitted). In *Estelle v. Gamble*, the United States Supreme Court explained:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain … Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth

> Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

429 U.S. 97, 106-07 (1976) (internal quotation marks omitted). The Supreme Court further concluded, "[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Estelle, 429 U.S. at 107. For instance, in *Jenkins v. Cnty. of Hennepin, Minn.*, the Eighth Circuit Court of Appeals determined that a nurse's decision to briefly postpone an X-ray reflected a medical judgment that the inmate's injury, though possibly serious, was not urgent. 557 F.3d 628, 632 (8th Cir. 2009). Although a negligent misdiagnosis does not create a cognizable claim under Section 1983, "[g]rossly incompetent or inadequate care can constitute deliberate indifference but the care provided must be so inappropriate as to evidence *intentional* maltreatment or a refusal to provide essential care." Dulany, 132 F.3d at 1242 (emphasis added). "Deliberative indifference is a subjective inquiry requiring the court to assess each defendant's knowledge at the time in question, not by hindsight's perfect vision. Cannon, 112 F.4th at 587 (internal quotation marks omitted).

### A.  QUALIFIED IMMUNITY STANDARD

Benning and the County Defendants contend they are entitled to qualified immunity on the Plaintiff's Section 1983 deliberate indifference claims. The doctrine of qualified immunity shields public officials performing their duties from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Stanton v. Sims, 571 U.S. 3, 5-6 (2013); El-Ghazzawy v. Barthiaume, 636 F.3d 452, 456 (8th Cir. 2011). The purpose of the doctrine is to allow public officials to perform their duties "as

they think right, rather than acting out of fear for their own personal fortunes." Greiner v. City of Champlin, 27 F.3d 1346, 1351 (8th Cir. 1994). The doctrine gives public officials "breathing room" to make reasonable mistakes of judgment and protects "all but the plainly incompetent or those who knowingly violate the law." Stanton, 571 U.S. at 6 (internal citations omitted). Whether an official is entitled to qualified immunity is a question of law for the court. Greiner, 27 F.3d at 1352.

In assessing a claim of qualified immunity the court must consider (1) whether the facts, viewed in a light most favorable to the plaintiff, establish the violation of a constitutional or statutory right, and (2) whether the right was clearly established such that a reasonable official would have known his actions were unlawful. El-Ghazzawy, 636 F.3d at 456; Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012). The second step of the analysis is fact-intensive and "must be undertaken in light of the specific context of the case, not as a broad general proposition." Samuelson v. City of New Ulm, 455 F.3d 871, 875 (8th Cir. 2006). If no constitutional violation occurred, the evaluation ends there. Fagnan v. City of Lino Lakes, 745 F.3d 318, 322 (8th Cir. 2014).

**B.      BENNING'S MOTION**

The Court concludes that Defendant Kerri Benning, FNP-C, did not deliberately disregard Christianson's medical needs. She addressed Christianson's medical needs and treated them in accordance with her medical judgment. Benning testified that she deduced that Christianson's "blood pressure had dropped, because . . . he had diuresed so much." See Doc. No. 71-3, p. 136. In response to the drop in blood pressure, she decreased the Lasix prescription that Christianson received on March 19, 2019. Id. The decrease in Lasix was a reasonable and sensible effort to

address Christianson's lowered blood pressure given that Christianson had lost approximately twenty-two pounds in two weeks, reported being occasionally dizzy, and reported an increase in urination. See Fourte v. Faulkner Cnty., Ark., 746 F.3d 384, 390 (8th Cir. 2014) (concluding that "[a]lthough the prison doctors may not have proceeded as quickly as hindsight perhaps allows us to think they should have, their actions were not deliberately indifferent. The doctors made efforts to cure the problem in a reasonable and sensible manner.")

At the April 3, 2019, appointment with Benning, Christianson noted he experienced a fever the prior day. Although the fever was not present during the appointment, Benning addressed the complaint by conducting an urinalysis and an influenza test, which both produced negative results. She further ordered his fever be treated symptomatically to determine whether the fever was the beginning of a viral process. Additionally, Benning ordered that Christianson return for follow up if his condition worsened or did not improve. See Doc. No. 70-3, p. 187.

Christianson argues Benning should have ordered labs at the April 3, 2019, appointment. Benning testified that she did not believe it was necessary to order labs that day. See Doc. No. 70-3, p. 186. Based on her assessment, Christianson was stable and appeared to have improved from his fever the day before. Benning was aware that Christianson had labs scheduled for five days later. Her decision regarding ordering labs as an additional diagnostic technique is a matter of medical judgment. Benning's decision, which was based on her belief that no urgent need for labs existed on April 3, 2019, does not equate with cruel and unusual punishment.

Further, Christianson's disagreement with the medical treatment Benning provided is insufficient to establish deliberate indifference. Given the information Benning had at the time of the appointment, she made reasonable and sensible efforts to address Christianson's lowered blood pressure and complaints of fever. She used her medical judgment in treating him accordingly.

Benning reviewed Christianson's records, spoke with another provider, performed a verbal history, preformed a physical assessment, and performed tests as she deemed medically necessary. She diagnosed Christianson, provided a treatment plan, and gave MCDC instructions to bring Christianson back for an evaluation if his condition did not improve or worsened. In fact, when asked about Benning, Christianson stated, "she treated me pretty good." See Doc. No. 70-1, p. 248. Christianson further acknowledged that Benning treated him with dignity and respect. Id. at p. 249-250.

In summary, there is no evidence that demonstrates Benning's care was akin to criminal recklessness or constituted an unnecessary and wanton infliction of pain. Viewing the facts in the light most favorable to Christianson, even if Benning was mistaken in her diagnosis, at most her actions amount to negligent misdiagnosis, which does not create a cognizable claim under Section 1983. There is no evidence that Benning had any further contact with Christianson regarding his symptoms or any involvement in the subsequent alleged treatment inadequacies and delays after the April 3, 2019, appointment. The undisputed facts show no intentional denial or delay in access to medical care, nor any indifference with the treatment provided by Benning. The Court concludes that no violation of the Eighth or Fourteenth Amendment occurred. Therefore, Benning is entitled to qualified immunity as to Christianson's deliberate indifference claim.

### B.     THE COUNTY DEFENDANTS' MOTION

#### 1.     JOHN DOE DEFENDANTS

The County Defendants argue the Section 1983 deliberate indifference claim against the John Does must be dismissed because Christianson failed to identify them. In response, for the first time throughout this litigation Christianson provided the identities of the John Does. See Doc.

No. 84, pp. 2-3. Thereafter, Christianson moved for leave to file an amended complaint that contains the identity of ten John Does. See Doc. No. 93. On February 18, 2025, the Court issued its Order Denying Plaintiff's Motion to Amend Complaint. See Doc. No. 102. The Court denied Christianson's motion for leave due to the undue delay and the prejudice the amended complaint would create at such a late stage of litigation. The Court incorporates by reference its order denying leave to file an amended complaint. Id. Due to the Plaintiff's failure to timely provide the identity of the John Doe Defendants and timely amend his complaint to join them, summary judgment is granted as to all claims against the John Doe Defendants.

## 2.    SHERIFF KERZMANN AND BROSSART

The Court previously dismissed Christianson's *Monell* claims against McClean County and Sheriff Kerzmann in his official capacity in its Order on Defendants' Motions to Dismiss. See Doc. No. 38. Christianson's only remaining claims against the County Defendants are his claims of deliberate indifference to serious medical needs against Sheriff Kerzmann and Brossart in their individual capacities. "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association." Smith v. City of Minneapolis, 754 F.3d 541, 547 (8th Cir. 2014) (internal quotation marks omitted). To maintain his claims against Sheriff Kerzmann and Brossart, Christianson must provide evidence that both Sheriff Kerzmann and Brossart had knowledge of and deliberately disregarded an objectively serious medical need.

As a preliminary matter, in his brief in opposition to the County Defendants' motion for summary judgment, Christianson argues that the County Defendants failed to follow policies and procedures in treating Christianson. See Doc. No. 84. He argues the County Defendants delayed

treatment, which he alleges allowed an infection to worsen. Christianson did not provide facts showing that the County Defendants intentionally denied or delayed his medical care. Further, Christianson's response did not dispute or make any reference to the County Defendants' contention they are entitled to qualified immunity.

The Plaintiff's deliberate indifference arguments primarily center around his allegation that a failure to diagnose and properly treat his infection caused the infection to develop into sepsis and then necrotizing fasciitis. In support of his argument, Christianson cites to the report of Tim Gravette, Christianson's expert on jail policies and procedures. See Doc. No. 85-11. Gravette's expert opinions do not establish a genuine issue of material fact as to Christianson's deliberate indifference claims against the County Defendants. Gravette's opinions are directed at jail staff generally, rather than any specific individual. His opinions are insufficient to support a deliberate indifference claim against the County Defendants because a Section 1983 claim requires that each defendant's conduct must be independently assessed. The Plaintiff has not presented any evidence to establish that Sheriff Kerzmann or nurse Brossart's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.

A review of the record reveals that the subjective component of the deliberate indifference analysis cannot be met as to Sheriff Kerzmann. According to Sheriff Kerzmann's declaration, he "had no knowledge of any serious medical need of Dirk Christianson at any time during his incarceration at the McClean County Detention Center from December 2018 through April 2019." See Doc. No. 77, p. 1. Christianson provided no evidence that Sheriff Kerzmann knew of and disregarded a serious medical need of Christianson. At the summary judgment state, Christianson's mere allegation is insufficient to show a genuine issue of material fact. Therefore, Sheriff Kerzmann is entitled to summary judgment as to Christianson's deliberate indifference claim.

Likewise, the subjective deliberate indifference component cannot be met as to nurse Brossart. When informed about Christianson's fever on April 3, 2019, Brossart instructed CO Six to take Christianson's vital signs. Upon CO Six notifying Brossart of Christianson's blood pressure, pulse, and temperature, Brossart instructed CO Six to bring Christianson to the Washburn Clinic for evaluation by medical personnel. Christianson was then evaluated by FNP Benning at the Washburn Clinic. As a nurse practitioner, Benning has a higher level of training and education than Brossart.

According to the expert opinions of Linda Bernard, RN, CCHP-RN, Jeff Eiser, and Dr. Sarah Nausheen, the medical care Christianson received at MCDC met applicable standards of care. See Doc. Nos. 79-14, 79-15, 79-17. Bernard noted that nurse Brossart "provided care within her scope of practice and referred Mr. Christianson to a higher level of care when his needs exceeded her scope of practice." See Doc. No. 79-14, p. 7. According to Dr. Nausheen, "Even at Sanford Hospital, it took time, testing, and significant diagnostic skills by medical doctors to identify that Mr. Christianson was septic as a result of necrotizing fasciitis." See Doc. No. 79-17, p. 7. Eiser stated that "any alleged injury suffered by Mr. Christianson during his incarceration was an unfortunate and unforeseeable event that happened in spite of the appropriate and reasonable efforts of Sheriff Jerry Kerzmann, the MCDC Administration, supervision and staff." See Doc. No. 79-15, pp. 20-21. Brossart's actions do not evidence intentional maltreatment or a refusal to provide essential care. Brossart made reasonable and sensible efforts to address Christianson's medical needs. Christianson did not present any evidence that Brossart disregarded a serious medical need.

Further, after the April 3, 2019, appointment, the record shows Brossart did not have the requisite knowledge of Christianson's alleged serious medical needs to meet the subjective

knowledge component of deliberate indifference. According to Brossart's declaration, she "had no knowledge that Christianson's fever symptoms continued after his visit with Ms. Benning on April 3 until after he was treated at Sanford Hospital in Bismarck." See Doc. No. 76, p. 1. She further stated she "had no knowledge of any serious medical need Christianson may have had following [her] call with CO Six on the morning of April 3, 2019, until after he was treated at Sanford hospital in Bismarck." Id. Christianson has not provided any evidence that shows Brossart had knowledge of any serious medical need after the April 3, 2019, appointment. In fact, the Plaintiff's expert, Tim Gravette, acknowledged that there is no indication in the jail record of anyone notifying Brossart of Christianson's temperature. See Doc. No. 85-11, p. 3. There is no evidence that Brossart had knowledge of, let alone disregarded, Christianson's serious medical need following the April 3, 2019, appointment. The Court concludes that no violation of the Eighth or Fourteenth Amendment occurred. Accordingly, Brossart is entitled to summary judgment as to Christianson's deliberate indifference claim.

The County Defendants also contend they are entitled to qualified immunity on Christianson's deliberate indifference claim. "Qualified immunity shields government officials from liability when their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Rusness v. Becker Cnty., Minnesota, 31 F.4th 606, 615 (8th Cir. 2022) (internal quotation marks and citations omitted). "Qualified immunity analysis involves two inquiries: (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the violation." Id. The facts of this case are very similar to those in Rusness v. Becker Cnty., Minnesota, where a pretrial detainee brought a Section 1983 claim against Becker County and jail personnel alleging deliberate

indifference to his medical needs. The Eighth Circuit Court of Appeals held that the jail personnel did not violate the detainee's Eighth or Fourteenth Amendment rights because the detainee did not manifest signs of a serious medical need that would be sufficiently obvious to the jail personnel. The court noted that the detainee's serious medical condition even eluded trained medical professionals. Accordingly, the court concluded the defendants were entitled to qualified immunity. Likewise, in the present case Christianson's serious medical need was not sufficiently obvious to jail personal and eluded trained medical professionals. Similar to *Rusness*, the facts in this case do not show intentional denial or delay in access to medical care. As concluded above, the County Defendants did not violate Christianson's Eighth or Fourteenth Amendment rights.

The County Defendants contend that even if Sheriff Kerzmann and nurse Brossart violated Christianson's constitutional rights, those rights were not clearly established at the time and thus Sheriff Kerzmann and Brossart are entitled to qualified immunity from Christianson's claims. Christianson's response in opposition to the motion for summary judgment fails to address the County Defendant's qualified immunity argument. See Doc. No. 84. Under Local Rule 7.1(F), the failure to respond to a motion may be considered an admission that the motion is well taken. See D.N.D. Local Civ. R. 7.1(F). See Westfall v. City of Grand Forks, No. A2-99-2, 2000 WL 33339627 (D.N.D. Aug. 2, 2000) (concluding, "The rule is equally applicable where the party files a response but does not address the issue … This Court is under no obligation to prosecute plaintiff's conspiracy claim for her and the Court refuses to do so.") Therefore, and in accordance with Local Rule 7.1(F), Sheriff Kerzmann and Brossart are granted qualified immunity from Christianson's Section 1983 claim.

III.   **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, Benning's motion for summary judgment (Doc. No. 68) is **GRANTED** and the County Defendants' motion for summary judgment (Doc. No. 74) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 23rd day of April, 2025.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court